UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR WIENER and PAULETTE WIENER, | **COMPLAINT** |
| *Plaintiffs,* | |
| -against- | Civil Action No.: 14-cv-3699 |
| FIREMAN'S FUND INSURANCE COMPANY and HALLIWELL ENGINEERING ASSOCIATES, INC. | Jury Trial is Demanded |
| *Defendants.* | |

Plaintiffs ARTHUR WIENER and PAULETTE WIENER ("Plaintiffs"), by and through undersigned counsel, Law Office of James M. Haddad, as and for a Complaint against the above named defendant, hereby aver, upon information belief:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff ARTHUR WIENER ("Arthur") is a natural person residing in Brooklyn, New York.

2. Plaintiff PAULETTE WIENER ("Paulette") is a natural person residing in Brooklyn, New York (hereinafter, collectively, "the Wieners" or "Plaintiffs").

3. Defendant FIREMAN'S FUND INSURANCE COMPANY ("FFIC") is a business organization, domiciled in the State of California, duly admitted and authorized by the New York State Department of Financial Services to conduct the business of insurance in the State of New York and actually is conducting such business.

4. Defendant HALLIWELL ENGINEERING ASSOCIATES, INC. d/b/a Halliwell Engineering Associates ("Halliwell"), is a business corporation formed and existing under and by virtue of the laws of the State of Florida.

5.	Defendant Halliwell maintains offices in and actually does business in the State of New York at 22 Cortlandt Street, 16th Floor, New York, NY 10007.

6.	There is complete diversity of the plaintiffs and defendants.

7.	The amount in controversy exceeds the jurisdictional threshold.

8.	This Court has jurisdiction of the parties and of the subject matter pursuant to 28 USC §1332.

9.	Venue is proper in the Eastern District of New York pursuant to 28 USC §1391.

## BACKGROUND EVENTS AND TRANSACTIONS

10.	On or about October 29, 2012 ("the date of loss") Plaintiffs owned and resided in a house located at 102 Coleridge Street, Brooklyn, New York 11235 ("the Premises").

11.	The Premises is located in the historic "Manhattan Beach" area of Brooklyn.

12.	During October 2012, among other relevant times, FFIC provided hazard insurance to the Plaintiffs, insuring the Plaintiffs, the Premises and contents thereof against risks of physical loss or damage, under policy number NZM 216 26 76, effective February 22, 2012 to February 22, 2013 ("the Policy").

13.	The Policy was a so-called "all risks" policy, covering all hazards of direct physical loss or damage to tangible property, unless specifically excluded.

14.	The Policy contained no exclusion for loss or damage caused by backup of sewers and drains or caused by sewage or sewer water.

15.	The terms of the Policy are hereby incorporated herein and Plaintiffs beg leave to refer to same at the time of trial.

16.	The Policy main coverage form is FFIC's form "5250 08-09 Prestige Home

Premier – NY."

17. The Policy also covered loss of use of property, as well as the costs of additional living expenses, costs to remove or protect property, and extensions of coverage.

18. The Policy covers the cost of claim preparation expenses.

19. The amounts of insurance for the policy were $2,298,000 for "Dwelling"; $459,600 for "Other Structures"; and $606,500 for "Personal Property"; each as respectively defined in the Policy.

20. On October 29, 2012 at about 6:30 p.m., and ensuing, the Premises suffered covered loss(es).

21. The aforementioned loss was caused by a covered cause or causes of loss, not excluded. The covered causes of loss included, without limitation, backup of sewage into the Premises.

22. As a result of the covered losses in question, the Plaintiffs suffered loss and damage to personal property and other covered property, and covered expenses, in excess of $700,000.00

23. Said loss was caused by backup of sewers and drains appurtenant to the "Paerdegat Basin CSO Facility" operated by the Department of Environmental Protection of the City of New York.

24. Said loss was not caused, directly or indirectly, by an excluded cause of loss.

25. In the alternative, if there was any water infiltration of the type excluded, the property in question had already been damaged by the sewer backup, which had occurred first in time.

26. Following the infiltration of sewage into the Premises, the property affected suffered ensuing covered loss from covered perils of electrical arcing, mechanical breakdown, rust, oxidation, discoloration, corrosion, fecal and bacterial contamination, twisting, warping, bending, delamination, hydrostatic pressure, act of governmental authority, and other covered perils and causes of loss.

27. The "Water Damage" exclusion of the Policy contains an exception to the exclusion, which states: "We do cover: (i) any resulting loss unless that resulting loss is itself not covered under Property Losses Not Covered;…."

28. The term "resulting loss" is not defined in the Policy.

29. Resulting loss caused by electrical arcing, mechanical breakdown, rust, oxidation, discoloration, corrosion, fecal and bacterial contamination, twisting, warping, bending, delamination, hydrostatic pressure, act of governmental authority, and other covered perils and causes of loss is not specifically excluded by the Policy terms, but rather, is expressly covered.

30. In the alternative, the "Water Damage" exclusion and the exception for "resulting loss" is unenforceably ambiguous.

31. On or about November 9, 2012, an employee of FFIC or its affiliates, named Craig Anderson, personally inspected the Premises.

32. At that time, Craig Anderson advised Arthur that the inspection indicated that the loss was caused by sewage backup, and was covered loss.

33. On November 10, 2013, Craig Anderson prepared an itemized estimate of the loss.

34. Notwithstanding the determinations of Craig Anderson, FFIC, unreasonably and

without justification or excuse, breached its obligations under the Policy, failing to pay the loss(es) in question.

35.     FFIC acted with actual malice.

36.     Plaintiffs are aware of many other claimants similarly situated in the Manhattan Beach area, whose covered losses were similarly wrongfully denied without justification or excuse by FFIC, including, without limitation, the claim of Dr. Raymond Reich residing at 131 Dover Street, Brooklyn, New York, and Maya and Alex Puzaiter at 60 Coleridge Street, as well as claims at 272 Beaumont Street.

37.     FFIC retained the services of Defendant HALLIWELL ENGINEERING ASSOCIATES, INC. d/b/a Halliwell Engineering Associates to prepare cause and origin reports of the losses in question, including the loss of Plaintiffs and the other wrongfully denied claims. (Hereinafter, Halliwell and FFIC may be referred to collectively as "the Defendants.")

38.     Halliwell prepared, at the urging of FFIC, knowingly false cause and origin reports, which were transmitted using interstate mail and wire, for the purpose of unlawfully denying the claims of the Plaintiffs as well as many other claimants in the Manhattan Beach area.

39.     In addition, said reports were prepared and maintained in the files of FFIC for the purpose of misleading the NYS Department of Financial Services, Insurance Division, in connection with anticipated complaints about unfair claims practices and wrongful claim denials.

40.     In addition, said reports were prepared by Halliwell, transmitted by interstate means by mail and wire, and maintained in the files of FFIC for the purpose of misleading the Department of Financial Services, Insurance Division, in connection with the exercise of the Department of its duties with respect to the oversight of FFIC as to compliance with New York

insurance laws and regulations.

41. These fraudulent activities were designed to frustrate the special Hurricane and/or Superstorm Sandy regulations and mediations mandated by the Governor of the State of New York in response to Hurricane and/or Superstorm Sandy.

42. The false reports were also made in violation of and derogation of the rules and requirements of the New York State Department of Education, Office of the Professions, which licenses and oversees licensed engineers in the State of New York, including, without limitation, the Rules of the Board of Regents, Part 29, §§29.1 and 29.3.

43. The wrongful claim denials and the fraudulent reports prepared in the attempt to justify and cover them up, constituted a collusive scheme and a large-scale, wholesale, generalized plan designed to unjustly enrich FFIC and Halliwell, to harm a substantial segment of the New York insurance market; to undermine the regulatory and governmental system of the State of New York; to unfairly compete with other insurers; and also negatively impacted public health and safety by making it difficult for affected homeowners to clean up and respond to hazardous sewage waste threatening them and the general public with the substantial risk and threat of disease and infection at a time when hospitals were closed, power was interrupted, emergency vehicles could not pass, communications were disrupted, and contractors were in short supply and overwhelmed.

44. In particular, Halliwell inspected the Premises on December 12, 2012, almost six weeks after the loss, and then prepared a report dated January 21, 2013.

45. The January 21, 2013 report noted, *inter alia*, "Sewer waste residue was observed on the walls and floor coverings" in the Premises.

46. The entire "background" section of the report is demonstrably false, including, among other things, that the Premises is located on Dover Street.

47. The January 21, 2013 report contains numerous other falsehoods, including, for instance, that "dirt and debris" were "observed on the fence along the west side of the property," when, in fact, the Premises has no fence.

48. The January 21, 2013 purposely omitted publicly available information that the neighborhood was generally affected by a sewage backup condition at about 6:30 p.m. on October 29, 2012, and instead, falsely and fraudulently concluded that the loss was caused by seawater flooding "shortly after…9:24 PM EDT…."

49. Subsequent and further reports of Halliwell with respect to the Plaintiffs' claim and the other wrongfully denied claims contained similar false and misleading information and conclusions.

50. Prior to the initiation of the fraudulent scheme to deny multiple claims, FFIC had accepted and paid several claims of the same nature in the Manhattan Beach area, including claims occurring at 273 Beaumont Street, and 16 Dover Street, which FFIC determined were caused by sewage backup and not by excluded water damage.

51. The engineering reports obtained by FFIC with respect to the claims at 273 Beaumont Street and 16 Dover Street had correctly concluded that the cause of loss was sewer backup and not flooding.

52. Accordingly, there is no possibility that FFIC could reasonably rely upon the reports of Halliwell with respect to the Plaintiffs' claim, which reports contained conclusions diametrically opposed to the conclusions of other engineers investigating the neighboring paid

claims.

53. Moreover, the presence of the contradictory reports and the payment of prior claims from the same incident are indicative of a motive of the Defendants to defraud policyholders and the public by obtaining self-serving fraudulent cause and origin reports in order to deny further claims and also in order to mislead any governmental investigation of same.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT FFIC

54. Each of the foregoing allegations is hereby reincorporated.

55. As a result of the foregoing, Defendant FFIC breached its contract with the Plaintiffs, causing actual damages equivalent to the benefit of the bargain in an amount to be determined at trial, but not less than $700,000.00.

56. In addition, the contractual damages include the costs of additional living expenses, and claim preparation expenses, including the costs of adjusters, accountants, attorneys and others whose labor was necessary in connection with establishing the claim.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT FFIC

57. Each of the foregoing allegations is hereby reincorporated.

58. The Defendant FFIC is liable to Plaintiffs for consequential damages of the kind generally insured, reasonably foreseeable and within the contemplation of the parties at the time of contracting, even if excess of the policy limits, in accordance with New York law as enunciated in *Bi-Econ. Mkt., Inc. v Harleysville Ins. Co. of NY*, 10 NY3d 187, and *Acquista v New York Life Ins. Co.*, 285 AD2d 73.

59. The Plaintiffs have suffered consequential damages in an amount to be determined at trial, including, but not limited to, interest, overhead, costs of adjusters,

professionals, attorneys and advisors necessary to complete the work, to repair the Premises, to perform the role normally performed by the insurer and its agents, as well as the costs of correcting the mistakes, fraud, attempted fraud, and other improper practices of FFIC.

### AS AND FOR A THIRD CAUSE OF ACTION FOR UNFAIR PRACTICES UNDER GENERAL BUSINESS LAW § 349, AGAINST ALL DEFENDANTS

60. Each of the foregoing allegations is hereby reincorporated.

61. The Defendants have conspired to engage in deceptive practices in the conduct of their businesses.

62. The Defendants have made representations and omissions likely to mislead a reasonable consumer acting reasonably under the circumstances.

63. The Defendants have made representations and omissions likely to mislead and obstruct the administration of governmental authority and endanger the public thereby.

64. The Defendants are liable to the Plaintiffs for actual damages resulting therefrom, as well as treble damages and attorney fees pursuant to GBL §349 and *Acquista v New York Life Ins. Co.*, 285 AD2d 73.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court grant judgment in favor of the Plaintiffs and against the Defendants jointly and severally:

(a) on the first cause of action in an amount to be determined at trial not less than $700,000.00, plus pre-verdict interest from October 29, 2012, costs, disbursements, interest; and

(b) on the second cause of action in an amount to be determined at trial not less than $250,000.00, plus pre-verdict interest from October 29, 2012, costs, disbursements, interest, attorney fees; and

   (c) on the third cause of action in an amount to be determined at trial not less than $500,000.00 plus pre-verdict interest from October 29, 2012, costs, disbursements, attorney fees, other interest, collection costs;

and such other and further relief for the Plaintiffs as this Court deems just and equitable.

Dated: New York, New York
   June 8, 2014

               LAW OFFICE OF JAMES M. HADDAD

               _____/s/_____
               James M. Haddad
               *Attorney for Plaintiffs*
               1700 Broadway, 41st Floor
               New York, New York 10019
               (212) 246-0546
               Fax: (212) 937-2133
               JH6783

Complaint1.docx